WALTER RAY SEIDEL, Jr., MD and
BRENDA LE SEIDEL,

                 Plaintiffs,

vs.                                              No. CIV 15-00925-MV/CG

CORY CRAYTON, PETE KASSETAS, and
JOHN DOES 1-40,

                 Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT**

       **THIS MATTER** comes before the Court on Defendants Cory Crayton, Pete Kassetas, and John Does 1-40's First Motion for Summary Judgment, Doc. 26, filed April 13, 2016. The Court, having considered the Motion, briefs, relevant law and being otherwise fully informed, will **GRANT IN PART** Defendants' Motion.

## BACKGROUND

       On September 10, 2013, Officer Cory Crayton of the New Mexico State Police ("NMSP"), in his marked patrol car, using his rear-facing radar, "clocked" Plaintiffs' SUV at 69 miles per hour in an area with a 55 miles per hour speed limit. *Affidavit of Cory Crayton*, Doc. 26-1 at ¶ 3. At approximately 7:25 a.m., Officer Crayton initiated a traffic stop of the SUV. *Id.* at ¶¶ 4-6; *COBAN Recording of Traffic Stop*, Doc. 28 at 1:02-1:35.

       Officer Crayton approached the passenger side of the vehicle, tapped on the window, and waited. *Id.*; Doc. 28 at 1:43-1:51. Officer Crayton opened the passenger door and introduced himself. Doc. 26-1 at ¶ 11; Doc. 28 at 1:50-1:54. According to Plaintiffs, as Officer Crayton opened the passenger's door, Mrs. Seidel was holding the door and trying to roll down the window. Doc. 32-1 at ¶ 5; *Affidavit of Brenda Lee Seidel*, Doc. 32-2 at ¶ 3. Mrs. Seidel claims

she was "partially pulled" with the door and said, "don't open the door," after which Officer Crayton "struck [her] with his left hand." Doc. 32-1 at ¶ 6; Doc. 32-2 at ¶¶ 4, 5.

Defendants instead assert that the COBAN[1] recording of the incident "shows that Officer Crayton had both of his arms outside of the plaintiffs' vehicle when he was at the passenger-side door: Crayton used his right hand to try to open the door, while his left hand was on the vehicle itself." Doc. 26 at ¶ 6. Defendants claim that Officer Crayton's arms remained outside the vehicle for the duration of the period the passenger door was open. *Id.* at .8.

The COBAN recording of the incident shows that Officer Crayton approached the SUV, tapped on the window, waited for several seconds, and then placed his left hand or arm on the vehicle and used his right to open the passenger side door. Doc. 28 at 1:35-1:51. Before and while opening the door several buttons along Officer Crayton's left sleeve were visible to the camera; however, the exact placement of his left hand and arm was obscured by the SUV. *Id.* Mrs. Seidel protested, and Officer Crayton's arm moved such that the previously visible buttons became obscured by the vehicle, suggesting his left arm may have moved toward Mrs. Seidel. *Id.* at 1:51-1:54.

During the brief moment that the door was open, Officer Crayton looked across the front seat and recognized the driver as Dr. Seidel. Doc. 26-1 at ¶ 12. Officer Crayton stated, "[i]n that split-second, Mr. Seidel looked right at me and in one sudden motion reached over and down towards his right hip as he quickly exited the vehicle. I could see a pistol in a holster on Mr. Seidel's right side. Given Mr. Seidel's sudden motion towards his gun and the manner in which he got out of the SUV to confront me, I believed Mr. Seidel intended to use his weapon and perceived him as a threat." Doc. 26-1 at ¶ 13. Dr. Seidel exited his vehicle. Doc. 32-1 at ¶ 12. Officer Crayton "fled from [Seidel's] vehicle, pulled his gun out, pointed it at [Dr. Seidel], and

---

[1] "COBAN" refers to the brand of camera placed on Officer Crayton's dashboard which captured the incident.

made statements that led [Dr. Seidel] to believe that [Officer Crayton] was accusing [Dr. Seidel] of holding a firearm in [his] hand." *Id.* at ¶ 7.

After Dr. Seidel exited his car, Officer Crayton ordered him to put his gun down; Seidel pointed his finger at Officer Crayton. Doc. 26-1 at ¶ 17; Doc. 28 at 1:54-1:57. Officer Crayton again ordered Dr. Seidel to put his gun down and told Dr. Seidel that he was under arrest; however, Dr. Seidel did not comply and reentered his vehicle. Doc. 28 at 1:57-2:02. Officer Crayton called for backup and ordered Dr. Seidel to get out of the vehicle with his hands in the air; however, Dr. Seidel sat inside his vehicle with his left leg out and left foot on the ground. Doc. 28 at 1:57-2:13. Over the next few minutes, while Dr. Seidel sat inside of his vehicle, Officer Crayton repeatedly told Dr. Seidel to exit the vehicle, to put his gun down, and that he was under arrest. Doc. 28 at 2:13-4:20; *Walter Seidel's Responses to Defendant Pete Kassetas' First Set of Requests for Admissions*, Doc. 26-2 at Request No. 7, 11. Dr. Seidel did not comply. Doc. 28 at 4:20-5:52. Officer Crayton again ordered Dr. Seidel to exit his vehicle without his gun and get on the ground. *Id.* at 5:52-6:01. Dr. Seidel did not comply; instead, he said something to Officer Crayton and pointed at him. *Id.* at 5:56-6:02. For several more minutes, Dr. Seidel sat in his vehicle and did not obey Officer Crayton's prior orders. *Id.* at 6:03-10:01. While sitting in his car, Dr. Seidel called 911 for help in dealing with Officer Crayton. *Amended Complaint for Violation of Civil Rights*, Doc. 60 at ¶ 11.

Additional police units began to arrive at approximately 7:34 a.m. Doc. 28 at 9:55-11:25; *Affidavit of Steve Minner*, Doc. 26-4 at ¶¶ 3-7. Dr. Seidel continued to disobey Officer Crayton's orders to get out of the car. Doc. 28 at 10:01-10:06. After other officers arrived, Dr. Seidel exited the vehicle, put his hands up, and addressed the officers while remaining close to his car. *Id.* at 11:40-12:01. Officer Crayton repeatedly ordered Dr. Seidel to get on the ground but Dr. Seidel

refused to comply. *Id.* After several seconds, Dr. Seidel lowered his hands, pointed at something to the right of the camera, and reentered his vehicle. *Id.* at 11:57-12:01.

Ruidoso Police Officer Dale Harrison then approached Dr. Seidel's vehicle. Doc. 26-1 at ¶¶ 21-22; Doc. 28 at 12:26-12:30; Doc. 49-1 at ¶ 11; Doc. 26-4 at ¶ 10. The two spoke for several minutes. Doc. 28 at 12:30-16:43. Dr. Seidel then got out of his vehicle, shut the driver's side door, and moved with Officer Harrison in the direction of the camera and the other officers. *Id.* at 16:43-16:57. Officer Crayton then ordered Dr. Seidel to put his hands on the police car. *Id.* at 16:57-17:00. Dr. Seidel said "No," and crossed his arms across his chest. *Id.*; Doc. 26-1 at ¶ 24; Doc. 26-2 at Request No. 1. Officer Crayton then "attempted to arrest and handcuff Walter Seidel—Seidel resisted by pulling away from Crayton and folding his arms."[2] Doc. 26 at ¶ 20; Doc. 26-1 at ¶ 24; Doc. 28 at 17:00-17:02.

"Walter Seidel grabbed onto the edge of the patrol car's hood and continued to resist as Officer Crayton tried to handcuff him. Crayton had to pry Seidel's fingers off the hood, and another officer helped Crayton secure Seidel in handcuffs. Crayton can be heard ordering Seidel to 'Give me your left hand.' Seidel did not voluntarily submit to being handcuffed."[3] Doc. 26 at ¶ 21 (citations to the record omitted); *see* Doc. 26-1 at ¶ 25; Doc. 26-2 at Request No. 5; Doc. 26-4 at ¶ 12; Doc. 28 at 17:06-17:08. Dr. Seidel was eventually handcuffed and arrested. Doc. 28 at 17:25-17:35. Mrs. Seidel was allowed to leave with the SUV. Doc. 26-1 at ¶ 26.

After the arrest, Dr. Seidel was booked into the Lincoln County Detention Facility for Speeding, Assault on a Peace Officer, Resisting an Officer, and Unlawful Use of 911. *Booking*

---

[2] Plaintiffs admit to these facts in their Response to Defendants' First Motion for Summary Judgment. Doc. 32 at ¶ 20.

[3] Plaintiffs admit to these facts in their Response to Defendants' First Motion for Summary Judgment. Doc. 32 at ¶ 21.

*Report*, Doc. 26-5 at 1. Officer Crayton filed a criminal complaint against Dr. Seidel for these offenses on September 20, 2013. *Criminal Complaint*, Doc. 26-6 at 1. Officer Crayton prepared a Probable Cause Statement and discussed the criminal charges with Assistant District Attorney ("ADA") Elizabeth Williams from the Twelfth Judicial District Attorney's Office, who approved the charges.[4] Doc. 26-1 at ¶ 27; *see also* Doc. 26-6 at 2. On May 11, 2015 the District Attorney's Office filed an Amended Complaint against Dr. Seidel dropping the Assault and Unlawful Use of 911 Charges but retaining the Speeding and the Resisting, Evading or Obstructing an Officer Charges. Doc. 26-7 at 1-2.

On August 19, 2015, Dr. Seidel entered into a Plea and Disposition Agreement with the State of New Mexico, wherein he pleaded no contest to the Speeding charge and the remaining charges were dismissed. *Plea and Disposition Agreement*, Doc. 26-8 at 1-2. On September 16, 2015, the Twelfth Judicial District Court for the State of New Mexico adjudicated Dr. Seidel guilty of Speeding. *Judgment and Sentence*, Doc. 26-9 at 1-3.

Neither Dr. Seidel nor Mrs. Seidel sought or received any medical treatment as a result of the incident on September 10, 2013. *Walter Seidel's Responses to Cory Crayton's First Set of Requests for Admissions*, Doc. 26-10 at Request No. 1; *Brenda Seidel's Responses to Cory Crayton's First Set of Requests for Admissions*, Doc. 26-11 at Request No. 1. Dr. Seidel did not seek any psychological or mental health treatment as a result of the incident and does not contend that he suffered physical, bodily, or psychological injury, or any other medical damages in this lawsuit as a result of the incident. Doc. 26-10 at Request No. 2; *Walter Seidel's*

---

[4] Plaintiffs argue that "any statements made by Ms. Williams are hearsay and inadmissible." Doc. 32 at ¶ 23. However, ADA Williams' approval of the charges was a non-hearsay verbal act because the rule against hearsay does not apply to "verbal acts in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed. R. Evid. 801 Advisory Committee's note to 1972 proposed rule, subdivision (c) (internal quotation marks omitted); *see id.* ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

*Supplemental Responses to Cory Crayton's First Set of Interrogatories*, Doc. 26-12 at Interrogatory No. 22.

Plaintiffs bring suit with six counts against Defendants. Count I is a claim of Battery asserted against Officer Crayton under the New Mexico Tort Claims Act. *Amended Complaint for Violation of Civil Rights*, Doc. 60 at 5-6. Count II is a claim of Malicious Prosecution asserted by Dr. Seidel against Officer Crayton under the New Mexico Tort Claims Act. *Id.* at 6. Count III is an excessive force claim under Article II, Section 10 of the Constitution of the State of New Mexico asserted against Officer Crayton under the New Mexico Tort Claims Act. *Id.* at 6-7. Count IV is a claim of Negligence asserted against Chief Kassetas and Does for failing to supervise, train, and control Officer Crayton. *Id.* at 7. Count V is a claim of a violation of the Fourth Amendment to the United States Constitution right to be free from excessive force and to be free from arrest and prosecution for crimes without probable cause asserted against Officer Crayton under 42 U.S.C. § 1983. *Id.* at 7-8. Count VI is a claim of Failure to Train, Supervise, and Control asserted against Chief Kassetas and Does under 42 U.S.C. § 1983. *Id.* at 8-9.

## DISCUSSION

Defendants seek summary judgment on the basis of qualified immunity for all claims. The Court will grant the motion in part by granting Summary Judgment for Defendants on Plaintiffs' federal law claims and will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## I.     Qualified Immunity

When a defendant invokes the protection of qualified immunity the plaintiff bears the "heavy two-part burden" of establishing that "the defendant's actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time

of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted). The Court may elect "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff meets his burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendant to demonstrate that no genuine dispute of material fact exists that would defeat its claim for qualified immunity. *See, e.g., Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted).

## II.     Unlawful Arrest

### A.     Legal Standard

The qualified immunity analysis for unlawful arrest consists of two prongs: (1) whether the officers had probable cause to arrest the § 1983 plaintiff, and (2) if probable cause is lacking, the court determines whether the § 1983 plaintiff's rights were clearly established by asking whether the officers "arguably had probable cause." *Kaufman v. Higgs*, 697 F.3d. 1297, 1300 (10th Cir. 2012). Where arrest itself is undisputed and there was no warrant, a violation of the Fourth Amendment occurs if the arrest is not supported by probable cause. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008).

The first prong, whether the officer had probable cause, is assessed "under an objective standard of reasonableness." *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015). The Court asks "whether 'the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Fogarty*, 523 F.3d at 1156 (quoting *United States v. Edwards*, 242 F.3d 928, 933. (10th Cir. 2001)). The

"officer's subjective reason for arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Id.* Under Tenth Circuit precedent, "[p]robable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

Under the second prong of qualified immunity, a § 1983 plaintiff bears the burden of showing the law was clearly established by showing that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman*, 697 F.3d at 1300 (quoting *Koch v. City of Del City*, 690 F.3d 1228, 1241 (10th Cir. 2011)). If there was "arguable probable cause" for the arrest, the defendant is entitled to qualified immunity. *Id.* (citing *Cortez v. McCauly*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc)).

B.      Probable Cause to Arrest Dr. Seidel

Officer Crayton arrested Dr. Seidel for (1) Speeding, (2) Assault on a Peace Officer, (3) Resisting an Officer, and (4) Unlawful Use of 911. Doc. 32 at 9.

Officer Crayton had probable cause to arrest Dr. Seidel for speeding. The parties do not dispute that Officer Crayton observed Dr. Seidel violating the law by speeding. Doc. 26 at ¶ 1; Doc. 32 at ¶ 1. However, Plaintiffs argue that under New Mexico law, "speeding is not an arrestable offense." Doc. 32 at 9. They cite the following language from the New Mexico Statutes Annotated 66-8-123:

> whenever a person is arrested for any violation of the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor, the arresting officer, using the uniform traffic citation in paper or electronic form, shall complete the information section and prepare a notice to appear in court, specifying the time and place to appear, have the arrested person sign the

agreement to appear as specified, give a copy of the citation to the arrested person
and release the person from custody.

N.M. Stat. Ann. § 66-8-123.

Officer Crayton did not violate the Constitution, specifically the Fourth Amendment, by arresting Dr. Seidel on speeding charges. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Virginia v. Moore*, 553 U.S. 164, 167, 176 (2008) (finding no violation of the Fourth Amendment where Virginia officers arrested a man for driving on a suspended license, an offense which under state law should ordinarily lead to a summons and not an arrest); *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) (noting that where "officers saw [the plaintiff] violate Albuquerque traffic ordinances by pedaling through a stop sign" officers had authority to effect an arrest).

Plaintiffs also argue that Officer Crayton did not have probable cause to arrest Dr. Seidel for resisting arrest. Under subsection D of New Mexico Statutes Annotated § 30-22-1, "[r]esisting, evading or obstructing an officer consists of … resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties."

Plaintiffs assert that Officer Crayton was no longer in the "lawful discharge of his duties" after striking Mrs. Seidel. Doc. 32 at 9. Plaintiffs argue that because Officer Crayton "knew he was no longer in the lawful discharge of his duties" he could not have believed that Dr. Seidel was committing the offense of Resisting, Evading or Obstructing an Officer under § 30-22-1 and therefore did not have probable cause to arrest Dr. Seidel for the resisting crime. *Id.* at 8.

Plaintiffs do not cite to any authority to support their claim that Officer Crayton was no longer in the lawful discharge of his duties. The New Mexico Supreme Court defined the

element of lawful discharge of duties by stating, "a police officer is engaged in the performance of his official duties if, '(h)e is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own.'" *State v. Doe*, 583 P.2d 464, 467 (N.M. 1978); *cf. State v. Frazier*. 537 P.2d 711, 713 (Ct. App. N.M. 1975) ("The police officer was not in the lawful discharge of his duties in stopping and restraining the defendant for identification" and lacked probable cause for an arrest).

The Court finds that Officer Crayton never stopped acting in the lawful discharge of his duties. Furthermore, Dr. Seidel's resistance is clear from the COBAN recording and Plaintiffs admit that Dr. Seidel resisted by refusing to comply, by verbally resisting, and by physically resisting. Doc 28 at 1:57 to 4:20, 5:52 to 6:03, 11:40 to 12:00, 16:57 to 17:08; Doc. 32 at ¶¶ 14, 20, 21.

Whether Officer Crayton had probable cause to arrest Dr. Seidel for Assault on a Peace Officer or Unlawful Use of 911 is less clear. However, for the purposes of an unlawful arrest claim, "[t]hat an officer may not have subjectively believed probable cause existed to arrest a suspect for a certain crime does not preclude the Government from justifying the suspect's arrest based on any crime an officer could objectively and reasonably have believed the suspect committed." *Culver v. Armstrong*, 832 F.3d 1213, 1218 (10th Cir. 2016). Officer Crayton objectively and reasonably believed that Dr. Seidel committed the offenses of speeding and resisting arrest. Therefore, Officer Crayton had probable cause to arrest Dr. Seidel. The Defendant, Officer Crayton, is entitled to qualified immunity and summary judgment shall be granted on this claim.

## III.    Malicious Prosecution[5]

### A.    Legal Standard

"[T]he relevant constitutional underpinning for a claim of malicious prosecution under §
1983 must be the Fourth Amendment's right to be free from unreasonable seizures." *Margheim
v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (quoting *Becker v. Kroll*, 494 F.3d 904, 914
(10th Cir. 2007)). Malicious prosecution claims under § 1983 include the following elements: (1)
the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action
terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued
confinement, or prosecution; (4) the defendant acted with malice; (5) the plaintiff sustained
damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

### B.    Plaintiffs Cannot Establish the Favorable Termination Element.

The Tenth Circuit has stated that, "to qualify as favorable, the termination of the original
criminal proceeding 'must in some way indicate the innocence of the accused." *Margheim*, 855
F.3d at 1086 (quoting *Cordova v. City of Albuquerque*, 816 F.3d 645, 651 (10th Cir. 2016)). To
determine whether a dismissal indicates innocence, the Court "look[s] to the stated reasons for
the dismissal as well as to the circumstances surrounding it" to determine "whether the failure to
proceed implies a lack of reasonable grounds for the prosecution." *Wilkins*, 528 F.3d at 803
(finding that dismissal of charges by a filing of *nolle proseques* constitutes a favorable
termination where the "dismissals were not entered due to any compromise or plea for mercy…
[r]ather, they were the result of a judgment by the prosecutor that the case could not be proven

---

[5] The Original and Amended Complaint both state the malicious prosecution claim in Count II as a claim under the
New Mexico Tort Claims Act. *See* Docs. 1 at 10; 60 at 6. However, Defendants in their First Motion for Summary
Judgement refer to Plaintiffs' malicious prosecution claim under § 1983, Doc. 26 at 12, and in response Plaintiffs
agree with the elements of the claim as stated in Defendants' Motion, Doc. 32 at 10. In light of this ambiguity, in
addition to declining to exercise supplemental jurisdiction over Plaintiffs' state law claims, *infra* at IV, the Court
explains here why it would grant summary judgment on Plaintiffs' malicious prosecution claim under § 1983.

beyond a reasonable doubt"); *Cordova*, 816 F.3d at 650-51 (finding that dismissal based on New Mexico's Speedy Trial Act is not a favorable termination even though the dismissal worked in favor of the plaintiff). Notably, "abandonment of the proceedings is ordinarily insufficient to constitute a favorable termination if 'the prosecution is abandoned pursuant to an agreement of compromise with the accused'" *Id.* at 802-03 (quoting Restatement (Second) of Torts § 659(c) (1977)). Moreover, the "plaintiff has the burden of proving a favorable termination." *Id.* at 803 (citations omitted).

Plaintiffs argue only that "the original action terminated in Plaintiff's favor. All of the arrestable charges were dismissed against Dr. Seidel." Doc. 32 at 10. The mere fact that the charges were dismissed does not indicate Dr. Seidel's innocence and is insufficient to satisfy the favorable termination requirement. Plaintiffs have not alleged any facts, provided any evidence, or made any legal arguments to explain why these dismissals should be considered a favorable termination outside of the above quoted language. Plaintiffs have failed to satisfy their burden of showing that the original charges resulted in a favorable termination. The Defendant, Officer Crayton, is entitled to qualified immunity and summary judgment on this claim.

## IV. Excessive Force

### A. <u>Legal Standard</u>

"Excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." *Morris*, 672 F.3d 1185, 1195 (10th Cir. 2012). Under this standard, the Court balances (1) "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation." *Id.* at 397.  In determining whether the use of force is reasonable in a particular situation, the Court considers factors including (1) the severity of the crime at issue; (2) whether the subject poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee. *See id.* at 396.  The Court judges the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.  Accordingly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments… about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205, (2001) *limited in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

B.      Excessive Force on Mrs. Seidel

In regards to the claim of excessive force used against Mrs. Seidel, Plaintiffs bear the burden of proof to overcome Defendants' assertion of qualified immunity. As discussed above, Plaintiffs must establish both that Officer Crayton violated a constitutional right and that the right was clearly established at the time of the challenged conduct. *See Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2015).

In the first prong, whether Officer Crayton violated Mrs. Seidel's constitutional rights, the Court asks whether "the facts taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right" without resolving genuine disputes of fact in favor of the party seeking summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014).

There is a genuine dispute of fact as to whether Officer Crayton "struck [Mrs. Seidel] with his left hand." Doc. 32-2 at ¶ 5. Defendants primarily argue that the COBAN recording of the incident "blatantly contradicts" the testimony presented by the Plaintiffs. Doc. 26 at 8. However, the recording of the incident is not clear enough to meet the "blatant contradiction" standard set forth in *Scott v. Harris*. 550 U.S. 372, 380 (2007). Under *Scott*, where the "parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* In *Scott*, the Court reasoned that a video recording of a car chase "so utterly discredited" the respondent's version of events such that "no reasonable jury could believe him" as to whether the respondent was driving in such a way as to endanger human life. *Id.* However, in *York v. City of Las Cruces*, the Tenth Circuit found that the District Court properly withheld qualified immunity and summary judgment in a § 1983 excessive force claim where "only part of the incident" was captured on an audiotape and parts of the tape were unintelligible. 523 F.3d 1205, 1210-11 (10th Cir. 2008).

Here, the video does not clearly show whether Officer Crayton applied any force to Mrs. Seidel. Doc 28 at 1:50 to 1:54. The placement of the camera and the location of the Plaintiffs' SUV obscure the positions of Officer Crayton's hands and arms and Mrs. Seidel's body. *Id.* Therefore, Plaintiffs' version of facts as set forth in their affidavits is not "blatantly contradicted by the record." *Scott*, 550 U.S. at 380. Taking the facts "in the light most favorable" to the Plaintiffs, Mrs. Seidel grabbed her door, tried to roll down her window, and was pulled with the door as Officer Crayton opened it. *Tolan*, 134 S. Ct. at 1865; Doc 32-2 at ¶ 5. Officer Crayton "struck [Mrs. Seidel] with his left hand." Doc. 32-2 at ¶ 5. Plaintiffs argue that the existence of this factual dispute precludes the grant of summary judgment; however, they must still satisfy

both steps of the qualified immunity analysis to defeat Defendants' assertion of qualified immunity. *Morris*, F.3d at 1191. In other words, even assuming the contact occurred, to succeed on their excessive force claim the Plaintiffs must show both a violation of the Fourth Amendment under the "objective reasonableness" standard and that a reasonable officer would understand that his conduct was unlawful in this situation. *Id.* at 1195, 1996.

Based on the amount of force that Officer Crayton used and the circumstances surrounding the incident, Plaintiffs have failed to establish that Officer Crayton violated the Fourth Amendment. At most, Plaintiffs allege that Officer Crayton "put his forearm onto and across Mrs. Seidel's chest and pushed her back into her seat." Doc. 60 at ¶ 8. Plaintiffs suggest that under the factors set forth in *Graham*, there was a violation of the Fourth Amendment because "there was no crime at issue with Mrs. Seidel, no threat posed by her, and no resistance." *See* 490 U.S. at 396; Doc. 32 at 7. However, at the time Officer Crayton allegedly applied force to Mrs. Seidel, he was conducting a traffic stop for an admitted speeding violation; traffic stops are inherently dangerous to police officers; and the words "don't open the door" as well as her attempts to close the door constitute at least some degree of resistance. *See United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc) ("The terrifying truth is that officers face a very real risk of being assaulted with a dangerous weapon each time they stop a vehicle.") *overruling on other grounds recognized in United States v. Stewart*, 473 F.3d 1265 (10th Cir. 2007). In light of these undisputed facts, it was not objectively unreasonable for Officer Crayton to push Mrs. Seidel back into her seat. Thus, Officer Crayton did not violate Mrs. Seidel's Fourth Amendment rights.

Under the "clearly established" prong of qualified immunity, "[t]he question of whether a right is clearly established must be answered 'in light of the specific context of the case, not as a

broad general proposition.' That is, the question is not whether the general right to be free from excessive force is clearly established, but whether [plaintiff] had a clearly established right under the facts of this case." *Id.* at 1196. The burden is on the Plaintiffs to "convince the court" that the law is clearly established and the "[p]laintiff's failure to do so… does not raise a jury question, but rather calls for entry of judgment in favor of the defendants." *Lutz v. Weld Cty. Sch. Dist. No. 6*, 784 F.2d 340, 343 (10th Cir. 1986).

"[C]learly established law" should not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Aschroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "While this Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 551 (2017) (citations omitted).

Plaintiffs argue that "the right to be free from excessive force during the course of an arrest is clearly established" by citing to the following cases: *Graham*, 490 U.S. 386; *Robles v. Shultz*, 2010 WL 1441287, at *2, 14 (D.N.M. Mar. 15, 2010) (plaintiffs showed violation of a clearly established right where officers allegedly held plaintiff at gunpoint and beat him despite "following their orders to the letter"); *Butler v. City of Norman*, 992 F.2d 1053, 1054-55 (10th Cir. 1993) (plaintiffs showed violation of a clearly established right where plaintiff hit a dog while driving and, after arriving on the scene, three police officers "rushed him, tackled him, threw him face first into the bed of the pickup… handcuffed his hands behind his back and beat him with flashlights… [and] kneed [him] in the groin"); *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992) ("[plaintiff] must show that [defendant's] actions constituted an excessive use of force under our former substantive due process standard" in an excessive force claim on

facts which occurred pre-*Graham* but decided post-*Graham*); and *Austin v. Hamilton*, 945 F.2d 1155, 1157-58 (10th Cir. 1991) (Plaintiffs established violation of a clearly established right where "[p]laintiff's affidavits reflect a twelve-hour episode of unnecessary physical violence and inhumane treatment, ending in their release without charge by defendants… after a small amount of Marijuana was found in their vehicle") *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304, 309 (1997); Doc. 32 at 6. None of these cases addresses whether a reasonable officer should understand that it would be unlawful to "push" a passenger "back into her seat" after opening the passenger door during a routine traffic stop. Doc. 60 at ¶ 8. Plaintiffs have not cited, and the Court has not found, any clearly established law which Officer Crayton violated in this case. Plaintiffs therefore have failed to establish the second prong of the qualified immunity analysis.

Finally, even if Plaintiffs had alleged facts sufficient to find Officer Crayton's actions unreasonable under the standard set forth in *Graham*, Plaintiffs have not satisfied their burden of proof because "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). Plaintiffs here have provided evidence that Officer Crayton "pushed" Mrs. Seidel and that she "gasped." Doc. 32-2 at ¶ 5. Mrs. Seidel admitted that she did not seek medical care for physical injuries and beyond claiming "emotional distress" in the complaint, there is no evidence in the record to support the claim of emotional distress. *See Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1219 (D.N.M. 2010) (Browning, J.) (holding that plaintiff failed to meet his burden of proving a violation of Fourth and Fourteenth Amendment Rights in a claim of excessive force where the plaintiff "does not testify to any ill-effects resulting from his encounter such as social stigma,

nightmares, a need for therapy, or even a new-found distrust of or discomfort around police officers"). Plaintiffs have not provided evidence of actual injury or even de minimis injury.

For all the reasons above, the Court concludes that Plaintiffs have not met their burden of establishing that Officer Crayton used excessive force against Mrs. Seidel. The Defendant, Officer Crayton, is entitled to qualified immunity on this issue and summary judgment shall be granted on this claim.

C.      Excessive Force on Dr. Seidel

In considering the excessive force claim by Dr. Seidel against Officer Crayton, the Court must determine whether the force Officer Crayton used to arrest Dr. Seidel exceeded "the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez*, 478 F.3d at 1126.

Plaintiffs argue that Officer Crayton arrested Dr. Seidel without probable cause and therefore: (1) pointing a firearm at Dr. Seidel, (2) wrestling him, and (3) handcuffing him was objectively unreasonable and constituted excessive force. Doc. 32 at 5.

First, the Court considers whether Officer Crayton acted unreasonably by pointing his firearm at Dr. Seidel. "[T]he right to arrest an individual carries with it the right to use some physical coercion to effect the arrest. *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1516 (10th Cir. 1995) (citing *Graham*, 490 U.S. at 397). Further, it is "not unreasonable for officers to carry weapons … or take control of a potentially dangerous situation." *Id.* Although pointing a firearm at a suspect "inescapably involves the immediate threat of deadly force" such a show of force may be permissible when it is "predicated on at least a perceived risk of injury or danger to the officers or others based on what the officers know at the time." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001). However, "[w]here a person has submitted to

the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others," the officer may be using excessive and unreasonable force by continuing to aim a loaded weapon at the person, "in contrast to simply holding the weapon in a fashion ready for immediate use." *Id.*

Officer Crayton did not act unreasonably by pointing a gun at Dr. Seidel. Officer Crayton recognized Dr. Seidel and saw "a pistol in a holster" on Dr. Seidel's right side in the "split-second" the [passenger] door was open." Doc. 26-1 at ¶¶ 12, 13. Dr. Seidel opened his door, stepped outside of his vehicle, and took several steps towards Officer Crayton's car while pointing his finger at Officer Crayton. Doc. 28 at 1:53-1:58. Officer Crayton moved away from the SUV, withdrew his firearm, pointed it at Dr. Seidel, and ordered Dr. Seidel to put his gun down. Doc. 28 at 1:53-2:00. Officer Crayton continued to order Dr. Seidel to put his gun down and Dr. Seidel stated, "I don't have a gun." *Id.* 1:56-1:58. As Dr. Seidel turned around to reenter his vehicle, Officer Crayton stated, "You are under arrest." *Id.* at 1:58-2:00. The *Graham* standard of excessive force "embod[ies] allowance for the fact that police officers are often forced to make split-second judgments… about the amount of force that is necessary in a particular situation" and based on the circumstances of this case, the Court finds that Officer Crayton's acted reasonably by making the split-second decision to aim his firearm at Dr. Seidel. 490 U.S. at 396-97.

Second, the Court will consider whether Officer Crayton acted reasonably by "wrestling" Dr. Seidel. Doc. 32 at 10. "If the plaintiff [in an excessive force claim] can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007). "If an officer reasonably, but mistakenly, believed that a suspect was

likely to fight back,… the officer would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 205.

The first *Graham* factor, "the severity of the crime at issue," weighs slightly in favor of Officer Crayton because there was probable cause to arrest Dr. Seidel for resisting arrest, a misdemeanor offense under NMSA § 30-22-1. 490 U.S. at 396; *See Clark v. Bowcutt*, 675 F. App'x 799 (10th Cir. 2017) (unpublished) (the first *Graham* factor weighed in favor of the officer, although without great force, where the offense was a class C misdemeanor); *but see Koch v. City of Del City*, 660 F.3d 1228, 1246–47 (10th Cir. 2011) (noting that the first *Graham* factor weighed in favor of the plaintiff when "[t]he crime for which she was arrested, obstruction, is only a misdemeanor").

The second factor, "whether the subject poses an immediate threat to the safety of the officers or others," weighs in favor of Plaintiffs because Dr. Seidel no longer wore his weapon on his hip and Officer Harrison appeared to have control over the scene. 490 U.S. at 396; *See* Doc. 28 at 16:44-16:59.

The third *Graham* factor, "whether [the suspect] is actively resisting arrest or attempting to flee" weighs in favor of Officer Crayton because, during the course of the incident, Dr. Seidel repeatedly refused to comply with Officer Crayton's verbal commands, and after finally exiting his car and moving with Officer Harrison towards the police cars, he did not comply with Officer Crayton's order to put his hands on the police car. Doc 28 at 1:59 to 12:00, 16:57 to 17:00. Instead of complying, Dr. Seidel said "No" and crossed his arms across his chest. *Id.* Dr. Seidel physically resisted arrest "by pulling away from Crayton and folding his arms" when Officer Crayton tried to handcuff Dr. Seidel. *Id.* at 17:00 to 17:02. Considering Dr. Seidel's physical resistance the Court concludes that Officer Crayton's use of force to wrestle Dr. Seidel was not

greater than "reasonably necessary to effect a lawful arrest." *Cortez*, 478 F.3d at 1127; *see also Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) ("the relevant inquiry is whether the taser use was reasonable and proportionate given Perea's resistance."); *Youbyoung Park v. Gaitain*, 2017 WL 782280, at *12 (10th Cir. Mar. 1, 2017) (unpublished) ("*Graham's* third factor heavily favors Defendants, strongly militating in favor of a determination that Defendants' use of force was reasonable" where Plaintiff "fought back 'forcefully' by tensing his arms, bracing his legs, and attempting to pull away from the officers").

Third, the Court will consider Officer Crayton's use of force in handcuffing Dr. Seidel. "In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez*, 478 F.3d at 1129. However, "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional." For example, in *Cortez v. McCauley*, the "only evidence in the record is [plaintiff's] affidavit that the handcuffs left red marks that were visible for days afterward." *Id*. This sort of injury was insufficient, as a matter of law, to support an excessive force claim "if the use of handcuffs is otherwise justified." *Id*. The Court concludes that the use of handcuffs was justified for the same reasons that Officer Crayton was justified in wrestling Dr. Seidel.

Further, Plaintiffs have not provided any evidence whatsoever to support their claim that Dr. Seidel suffered injury at the hands of Officer Crayton. In fact, they admit that Dr. Seidel "does not contend that he suffered any medical damages, physical/bodily injury or psychological injury as a result of the incident." Doc. 26 at ¶ 25; Doc. 32 at ¶ 25. Thus, Plaintiffs have failed to establish that Officer Crayton violated Dr. Seidel's right to be free from the use of excessive

force. Defendants are entitled to qualified immunity on this issue, and summary judgment shall be granted.

## V. Failure to Train and Supervise

### A. Legal Standard

"Supervisory status alone does not create § 1983 liability." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). The Tenth Circuit requires "an affirmative link... between the constitutional deprivation and either the supervisor's personal participation, ... exercise of control or direction, or ... failure to supervise" to impose supervisory liability under 42 U.S.C. § 1983. *Id.* (quoting *Green v. Branson*, 108 F.3d 1296, 1302. (10th Cir. 1997)). A plaintiff may succeed in supervisory liability claim under § 1983 if they show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

In the specific context of a failure to train claim under 42 U.S.C. § 1983, the parties agree that the Plaintiffs must show the following:

> 1) an *underlying violation* of [Plaintiffs'] constitution rights; 2) that the supervisor-defendant's personal involvement *caused* the misconduct complained of; and 3) that the supervisor-defendant acted with the state of mind or *intent* required to establish he committed a constitutional violation; specifically, at minimum, establish a deliberate and intentional act on the part of the defendant to violate the plaintiff's legal rights.

*Kemp v. Lawyer*, 846 F. Supp. 2d 1170, 1175 (D. Colo. 2012) (citing *Dodds*, 614 F.3d at 1209; *Myers v. Koopman*, 2011 WL 650328 (D. Colo. 2011)); *see also* Doc. 26 at 16-17; Doc. 32 at 11.

B.      Supervisory Liability of Chief Kassetas

Once again facing qualified immunity, Plaintiffs bear the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). "The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that the right was clearly established at the time of the defendant's conduct." *Id.*; *Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006) (upholding grant of summary judgment on claim of supervisory liability where plaintiffs failed to show an underlying constitutional violation).

Plaintiffs have not established an underlying constitutional violation to survive summary judgment on their claim of supervisory liability based on Chief Kassetas' Failure to Train, Supervise and Control. *See Kemp*, 846 F. Supp. 2d at 1175. Here, the Court first found that Plaintiffs did not provide sufficient evidence to show a constitutional violation in their Excessive Force claims. Second, Plaintiffs failed to establish that Officer Crayton violated the Fourth Amendment by arresting Dr. Seidel because Officer Crayton had probable cause to arrest Dr. Seidel. Third, Plaintiffs did not establish a constitutional violation in their malicious prosecution claim because Officer Crayton had probable cause and Plaintiffs' failed to show favorable termination of the charges.

Chief Kassetas is entitled to qualified immunity because Plaintiffs have failed to establish an underlying constitutional violation by Officer Crayton. Summary judgment shall be granted on this claim.

## VI.     State Law Claims

Plaintiffs have asserted state law claims of Battery, Malicious Prosecution, Unreasonable Seizure, Excessive Force, and Negligence against Defendants. *See* Doc. 60 at ¶¶ 19-35. The

Court, having granted summary judgment on all of Plaintiff's federal law claims, declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Nielander v. Bd. Of Cnty. Comm'rs*, 482 F.3d 1155, 1172 (10th Cir. 2009) ("Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if . . . the district court has dismissed all claims over which it has original jurisdiction").

**IT IS THEREFORE ORDERED** that Defendants' First Motion for Summary Judgment, Doc. 26, filed April 17, 2016, is **GRANTED IN PART**. The Court declines to exercise supplement jurisdiction over Plaintiffs' state law claims.

Dated this 19th day of October, 2017.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE