# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WALTER RAY SEIDEL, Jr., MD and
BRENDA LE SEIDEL,

       Plaintiffs,

vs.                               No. CIV 15-00925-MV/CG

CORY CRAYTON, PETE KASSETAS, and
JOHN DOES 1-40,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Sanctions Pursuant

to Fed R. Civ. P. 11 regarding Plaintiffs' Excessive Force, Battery and Malicious Prosecution

Claims, Doc. 35, filed May 17, 2016. This Court, having considered the motion, briefs, relevant

law and being otherwise fully informed, will **GRANT** Defendants' Motion.

## LEGAL STANDARD

Rule 11(b) of the Federal Rules of Civil Procedure provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by
> signing, filing, submitting, or later advocating it—an attorney or unrepresented
> party certifies that to the best of the person's knowledge, information and belief,
> formed after an inquiry reasonable under the circumstances: … (2) the claims,
> defenses, and other legal contentions are warranted by existing law or by a
> nonfrivolous argument for extending, modifying, or reversing existing law or for
> establishing new law; (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). "[T]he award of Rule 11 sanctions involves two steps." *Adamson v.*

*Bowen,* 855 F.2d 668, 672 (10th Cir. 1988). First, the Court must find that a pleading violates

Rule 11. The first step "typically involves subsidiary findings, such as the current state of the law

or the parties' and attorneys' behavior and motives within the context of the entire litigation." *Id.*

Second, the Court imposes an "appropriate sanction." *Id.*

"The standard by which courts evaluate the conduct of litigation is objective reasonableness – whether a reasonable attorney admitted to practice before the district court would file such a document." *Id.* Accordingly, "[i]f, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under Rule 11." *Id.* (citation omitted).

The language of Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment). In determining whether the signer's conduct is reasonable, "the court is expected to avoid using the wisdom of hindsight" and inquire only as to "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.*

"The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities." *Id.* The Court may consider the following factors: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in

the same case; and (9) what amount is needed to deter similar activity by other litigants. *Id.* The Court has discretion to determine what sanctions, if any, should be imposed for a violation, but "sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Id.*

## DISCUSSION

**I.      Brenda Le Seidel's Battery and Excessive Force Claims**

Defendants first move for sanctions against Plaintiffs' counsel based on Plaintiffs' claims for battery and excessive force against Mrs. Seidel. They claim that the COBAN[1] video of the incident "completely undermines and undercuts plaintiffs' allegations." Doc. 35 at 2. Defendants assert that the video "shows that Officer Crayton had both of his arms outside of the plaintiffs' vehicle when he was at the passenger-side door" and that "[t]he video clearly shows that at *no point* did Officer Crayton put his forearm into the vehicle and 'batter' Mrs. Seidel." *Id.* Plaintiffs, on the other hand, claim that there is an evidentiary dispute which is "more than adequate to show that there is a factual basis upon which the lawsuit may proceed." Doc. 43 at 2.

As the Court set forth in its Memorandum Opinion and Order Granting In Part Defendants' First Motion for Summary Judgment, entered concurrently with this Opinion, the issue of whether Officer Crayton made contact with Mrs. Seidel is unresolved. The video of the incident does not clearly show whether Officer Crayton applied force to Mrs. Seidel. *See* Doc. 28 at 1:50 to 1:54. The camera is positioned such that Officer Crayton's hand and forearm are blocked by Plaintiffs' SUV. *Id.* Plaintiffs' claims are supported by two affidavits and the Court finds no violation of Rule 11 because there is some evidentiary support and legal basis for these claims.

---

[1] COBAN refers to the brand of camera on Officer Crayton's dashboard, which recorded the incident.

## II.     Walter Ray Seidel's False Arrest and Malicious Prosecution Claims

Defendants next seek sanctions against Plaintiffs' counsel for the claim that Officer Crayton lacked probable cause to arrest and charge Dr. Seidel with crimes. Doc. 35 at 6. Probable cause exists where "'the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (quoting *United States v. Edwards*, 242 F.3d 928, 933. (10th Cir. 2001)). "[T]he probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009).

Officer Crayton arrested and brought a criminal complaint against Dr. Seidel for (1) Speeding, (2) Assault on a Peace Officer, (3) Resisting an Officer, and (4) Unlawful Use of 911. Doc. 26-6 at 1. In the Amended Complaint, Plaintiffs assert the following as the basis for their claims:

> At the time that Crayton arrested and charged Dr. Seidel, he lacked a reasonable belief that Dr. Seidel had committed any criminal act. Crayton's arrest of Dr. Seidel was without probable cause and Crayton knew it was without probable cause. Further, Crayton knew at the time of the arrest that he was required to possess probable cause in order to arrest and charge Dr. Seidel with any of the crimes and continued to arrest and charge Dr. Seidel despite knowing that he lacked probable cause for the arrest and charges.

Doc. 60 ¶ 13. Further, Plaintiffs claim in Counts II and V of the Complaint that Officer Crayton charged Dr. Seidel "without probable cause" and in Count III that "Crayton's actions in charging Dr. Seidel with the crimes described above despite his lack of probable cause and his knowledge that Dr. Seidel did not commit the charged crimes constituted a violation of Dr. Seidel's rights." Doc. 60 at ¶¶ 24, 30, 37.

A.    Speeding

Plaintiffs admit that Officer Crayton observed the SUV speeding and, prior to the current lawsuit, Dr. Seidel pleaded no contest to the speeding charges. Doc. 26-8 at 1; Doc. 32 at ¶ 1. Nevertheless, in Count V, Plaintiffs allege that Officer "Crayton arrested Dr. Seidel and charged him with crimes, all without probable cause. Crayton's arrest of Dr. Seidel was unreasonable and violated the Fourth Amendment as applied to the states through the Fourteenth Amendment." Doc. 60 at ¶ 37. Moreover, Plaintiffs restate their position in their Response to Defendants' First Motion for Summary Judgment by stating that "speeding is not an arrestable offense in New Mexico" and "[c]onsequently, Crayton's arrest of Dr. Seidel was made without probable cause and thus violated the 4ᵗʰ Amendment." Doc. 32 at 9.

Plaintiffs contend that "speeding is not an arrestable offense in New Mexico." Doc. 32 at 9. The extent of Plaintiffs' legal inquiry on the issue appears to be limited to a review of one New Mexico statute:

> [W]henever a person is arrested for any violation of the Motor Vehicle Code or other law relating to motor vehicles punishable as a misdemeanor, the arresting officer, using the uniform traffic citation in paper or electronic form, shall complete the information section and prepare a notice to appear in court, specifying the time and place to appear, have the arrested person sign the agreement to appear as specified, *give a copy of the citation to the arrested person and release the person from custody*.

N.M. Stat. Ann. § 66-8-123 (emphasis added); Doc. 32 at 9.

However, Plaintiff does not cite any authority showing that an arrest for speeding violates the Fourth Amendment. Even if an arrest for speeding is contrary to New Mexico law, it is clearly established that such an arrest does not violate the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Virginia v. Moore*, 553 U.S. 164, 167,

176 (2008) (finding no violation of the Fourth Amendment where Virginia officers arrested a man for driving on a suspended license, an offense which under state law should ordinarily lead to a summons and not an arrest); *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) (noting that where "officers saw [the plaintiff] violate Albuquerque traffic ordinances by pedaling through a stop sign" the officers had authority to effect an arrest).

Plaintiffs' claim that Officer Crayton's arrest of Dr. Seidel violated the Fourth Amendment is not supported by existing law and Plaintiffs do not make any arguments "for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The Court finds that Plaintiffs' counsel violated Rule 11 in Plaintiffs' Response to Defendants' First Motion for Summary Judgment and is subject to sanctions because he either failed to make a reasonable inquiry into or disregarded the relevant law.

B.   Assault on a Peace Officer and Resisting, Evading or Obstructing an Officer

Plaintiffs also argue that Officer Crayton lacked probable cause to arrest Dr. Seidel for Assault on a Peace Officer and Resisting an Officer. *See* Doc. 32 at 9. The party who certified a pleading may be sanctioned for violating Rule 11(b)(2) if the legal contentions are unwarranted or frivolous. Fed. R. Civ. P. 11(b)(2). Under New Mexico law, Assault on a Peace Officer may consist either of "(1) an attempt to commit a battery upon the person of a peace officer while *he is in the lawful discharge of his duties*" or "(2) any unlawful act, threat or menacing conduct which causes a peace officer while *he is in the lawful discharge of his duties* to reasonably believe that he is in danger of receiving an immediate battery." N.M. Stat. Ann. § 30-22-21 (emphasis added). The Resisting, Evading or Obstructing an Officer crime consists of "resisting or abusing any judge, magistrate or peace officer *in the lawful discharge of his duties*." N.M.

6

Stat. Ann §30-22-1 (emphasis added). Plaintiffs' claim depends on the argument that Officer Crayton was no longer in the lawful discharge of his duties.

The New Mexico Supreme Court has defined the scope of an officer's lawful discharge of duties in *State v. Doe*. 583 P.2d 464, 467 (N.M. 1978). "[A] police officer is engaged in the performance of his official duties if, '(h)e is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own.'" *Id.* Plaintiffs argue that "[o]nce Crayton struck Mrs. Seidel, he was no longer in the 'lawful discharge of his duties.'" Doc 32 at 8. The Court disagrees with Plaintiffs' conclusion and finds that Officer Crayton acted within the lawful discharge of his duties. Even though Plaintiffs do not expressly argue for a modification or extension of existing law, the Court finds that Plaintiffs make a nonfrivolous argument for the extension of existing law: that an officer who makes contact with the passenger of a vehicle stopped for a traffic violation ceases to act "within the scope of what [he] is employed to do" and is instead "engaging in a personal frolic of his own." *State v. Doe*, 583 P.2d at 467; *see* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment) ("Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.").

Additionally, under Rule 11(b)(3), sanctions may not be imposed where "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. Rule 11(b)(3). Regarding the alleged assault, the COBAN video shows that Dr. Seidel exited his vehicle with a gun on his hip, took several steps towards Officer Crayton, pointed at him, and

responded to Officer Crayton's demands to put down his gun by stating, "I don't have a gun," before returning to his vehicle. Doc. 28 at 1:54 to 2:03.

Whether the "facts and circumstances" within Officer Crayton's knowledge were "sufficient in themselves to warrant a man of reasonable caution in the belief" that the Assault on a Peace Officer crime had been committed is an unresolved question of fact. *Fogarty* 523 F.3d at 1156. Under New Mexico law, Assault on a Peace Officer includes an attempt to commit a battery on a peace officer, or any unlawful act, threat, or menacing conduct which causes a peace officer to reasonably believe that he is in danger of receiving an immediate battery. *See* N.M. Stat. Ann. § 30-22-21. The unresolved issue does not preclude summary judgment because the Court concludes that Officer Crayton had probable cause to arrest Dr. Seidel for speeding and resisting arrest.

In regards to the alleged resisting, the COBAN recording clearly shows, and Plaintiffs admit, that Dr. Seidel resisted by refusing to comply with Officer Crayton's commands, verbally resisted by stating "No" when told to put his hands behind his back, and physically resisted by crossing his arms across his chest and by "pulling away from Crayton and folding his arms." Doc. 28 at 1:54 to 6:02, 10:01 to 10:06, 11:40 to 12:01, 16:57 to 17:02; Doc. 26 at ¶ 20; Doc. 26-1 at ¶ 24. These facts are sufficient in themselves to warrant a man of reasonable caution in the belief that the crime of Resisting, Evading or Obstructing an Officer had been committed. *See* N.M. Stat. Ann. §30-22-1 ("resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties."). Accordingly, the Court finds that sanctions under Rule 11(b)(2) are not warranted for the argument that Officer Crayton lacked probable cause to arrest Dr. Seidel for Assault on a Peace Officer and Resisting an Officer.

C.    <u>Unlawful Use of 911</u>

Under New Mexico Statutes Annotated § 63-9D-11.1(A), "[a]ny person who knowingly dials 911 for the purpose of reporting a false alarm, making a false complaint or reporting false information that results in an emergency response… is guilty of a petty misdemeanor." N.M. Stat. Ann. § 63-9D-11.1(A). In their Response to Defendant's First Motion for Summary Judgment, Plaintiffs claim that, "[o]nce Dr. Seidel was met with Crayton un-holstering his firearm and pointing it at him, he returned to his vehicle and called 911 for help. Dr. Seidel did not make any false report in the 911 call nor did he abuse the 911 system in any way." Doc. 32 at 8. Defendants, in their Motion for Sanctions, acknowledge that Dr. Seidel called 911 for the purpose of seeking assistance; however, they claim that Dr. Seidel "was the instigator/aggressor" and therefore was not in need of emergency assistance. Doc. 35 at 9.

In his affidavit, Dr. Seidel stated, "I called 911 and asked that they send sheriff's deputies to the location. I did not abuse the 911 system or make any false report." Doc. 32-1 at ¶ 3. The question of probable cause depends on whether the facts and circumstances available to Officer Crayton would warrant a man of reasonable caution in the belief that an offense has been or is being committed. *See Fogarty* 523 F.3d at 1156. Whether Dr. Seidel violated § 63-9D-11.1(A) and whether Officer Crayton had probable cause to arrest him for Unlawful Use of 911 is an unresolved question of fact. Because the Court finds that there is a factual issue of whether Officer Crayton unlawfully arrested and maliciously prosecuted Dr. Seidel for Unlawful Use of 911, the Court will not impose sanctions regarding Plaintiffs' claims that Officer Crayton unlawfully arrested and maliciously prosecuted Dr. Seidel for Unlawful Use of 911.

### III.     Appropriate Sanctions for Violation of Rule 11

The Court has considered the relevant factors set forth in the Advisory Committee Notes to the 1993 Amendment to Rule 11. Several factors weigh in favor of nonmonetary sanctions. First, the conduct does not appear to be willful; rather, it appears Plaintiffs' counsel acted negligently in failing to make a reasonable inquiry into Fourth Amendment case law. Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment). Second, the conduct "infected" only Count V, and not the entire pleading. *Id.* Third, this particular conduct did not substantially increase the time or expense of the litigation because it represents a relatively minor component of Plaintiffs' overall argument. *Id.* On the other hand, this is the second time Plaintiff has been sanctioned in this case alone, and Plaintiffs' counsel is trained in the law. *See Id.* (the Court may consider "whether [the improper conduct] was part of a pattern of activity, or an isolated event").

The Court finds that Plaintiffs' counsel violated Rule 11(b)(2) by not making a sufficient inquiry into the legal basis for Plaintiffs' claim that Officer Crayton violated the Fourth Amendment by arresting and charging Dr. Seidel for speeding. The Court further finds that a reprimand will be sufficient to deter Plaintiffs' counsel and other similarly situated individuals from repeating this sort of conduct. The Court grants Defendants' motion for Sanctions and reprimands Plaintiffs' counsel for their conduct discussed in this Order.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 Regarding Plaintiffs' Excessive Force, Battery and Malicious Prosecution Claims, Doc. 35, filed May 17, 2016, is **GRANTED**.

Dated this 19th day of October, 2017.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE


Miguel Garcia                                Mark D. Standridge
John R. Hakanson, P.C.                       Jarmie & Associates
*Attorney for Plaintiffs*                    *Attorney for Defendants*